# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **THOMAS C. MCGEE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| | ) | **No. 4:11CV2212SNLJ** |
| | ) | **(NCC)** |
| **JEFF NORMAN,** | ) | |
| | ) | |
| **Respondent,** | ) | |

## REPORT AND RECOMMENDARION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  This matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 18).  After reviewing the case, the court has determined that Petitioner is not entitled to relief.  As a result, the court will recommend that the Petition be dismissed.

## I.
## BACKGROUND

Petitioner was charged, by a nine-count information, for crimes against Marilyn Sharpe, J.B. Tidwell, and Alice Stith.  In Count 1, Petitioner was charged with the class B felony of robbery in the second degree, in that, acting with another, he forcibly stole over $9,000 owned by Ms. Sharpe.  In Count 2, Petitioner

1

was charged with the class B felony of kidnapping, in that, acting with another, Petitioner unlawfully held Ms. Sharpe without her consent, for the purpose of the felony robbing Ms. Sharpe of $14,500 cash or, in the alternative, for the purpose of terrorizing Ms. Sharpe. In Count 3, Petitioner was charged with the class A misdemeanor of false imprisonment, in that, acting with another, he falsely represented to Ms. Sharpe that he was a law enforcement officer, with the purpose of inducing Ms. Sharpe to submit to his pretended authority, and Petitioner commandeered Ms. Sharpe's vehicle and forced her to withdraw over $9,000, in that pretended capacity.

In Count 4, Petitioner was charged with the class C felony of attempted stealing over $25,000, in that, acting with another, Petitioner and his accomplice falsely represented themselves as police officers and appeared to obtain money from Mr. Tidwell, and such conduct was a substantial step toward the commission of the crime of stealing over $25,000 from Mr. Tidwell, and was done with the purpose of committing such stealing. In Count 5, Petitioner was charged with the class A misdemeanor of false impersonation, in that, acting with another, Petitioner falsely represented to Mr. Tidwell that he was a police detective, with the purpose of inducing Mr. Tidwell to rely upon his pretended official actions, and Mr. Tidwell went to the bank in accordance with Petitioner's instructions.

In Count 6, Petitioner was charged with the class B felony of stealing by deceit, in that, acting with another, Petitioner appropriated $6,193, owned by Ms. Stith, with the purpose of depriving her thereof by deceit, in that Petitioner represented to Ms. Stith that he and his accomplice were police officers investigating counterfeit United States currency, which representations were false and known by Petitioner to be false, and Ms. Stith relied on the representations and was thereby induced to part with such property. In Count 7, Petitioner was charged with the class A misdemeanor of false imprisonment, in that, acting with another, Petitioner falsely represented to Ms. Stith that he was a law enforcement officer, with the purpose of inducing Ms. Stith to submit to his pretended official authority, and Petitioner caused Ms. Stith to give him United States currency in reliance upon his pretended official authority.

In Count 8, Petitioner was charged with the class C felony of stealing by deceit, in that, acting with another, he appropriated $16,050, which was owned by Ms. Stith, and Petitioner appropriated such properly from Ms. Stith with the purpose of depriving her by deceit in that Petitioner represented to Ms. Stith that he and his accomplice were police officers investigating counterfeit United States currency, which representations were false and known by Petitioner to be false, and Ms. Stith relied on the representations and was thereby induced to part with such property.

In Count 9, Petitioner was charged with the class A misdemeanor of false imprisonment, in that, acting with another, Petitioner falsely represented to Ms. Stith that he was a law enforcement officer with the purpose to induce Ms. Stith to submit to his pretended official authority, and Petitioner caused Ms. Stith to give him United States currency in reliance upon his pretended official authority. Petitioner was charged as a persistent offender based on his previously being found guilty of two or more felonies. (Resp. Ex. A at 9-11).

All three victims were approximately eighty years old. The State charged Andrea Wilks as Petitioner's accomplice in committing the offenses against Ms. Sharpe and Mr. Tidwell. Missouri v. McGee, 284 S.W.3d 690, 695 (Mo. Ct. App. 2009).[1] Beginning on August 24, 2007, Petitioner and Mr. Wilks were tried together by jury. The evidence at Petitioner's trial was as follows:

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon,

## A. Ms. Sharpe - Robbery, Kidnapping, & False Impersonation of a Police Officer

On October 8, 2003, as Ms. Sharpe was driving to the grocery store, two men approached and stopped her vehicle. The heavier man knocked on the driver's side window, displayed a badge, and indicated that he was an off-duty police officer. The heavier man then entered the vehicle on the front passenger side, and the other man entered the vehicle from the back seat. Ms. Sharpe later identified the heavier man as Defendant and the other man as co-defendant Wilks.

After assuming control of the car, the men told Ms. Sharpe to drive to the Bank of America on Lindell to withdraw money from her bank account. Upon arriving at the Bank of America, Mr. Wilks placed a "pen" on Ms. Sharpe's shirt and explained that it would monitor her conversation while inside bank. Then, Ms. Sharpe and Defendant exited the vehicle and walked towards the bank. Defendant instructed Ms. Sharpe to withdraw $9,000 and not to converse with the tellers. Defendant waited while Ms. Sharpe went in the bank and obtained a cashier's check for $9,000. Surveillance footage from the Bank of America at Lindell showed Ms. Sharpe inside the bank, making a transaction, and wearing the "pen" that had been placed on her to monitor her conversations.

When Defendant and Ms. Sharpe returned to the vehicle, Defendant took over driving and drove to a number of other banks. Surveillance footage from the Bank of America located in downtown St. Louis showed Ms. Sharpe inside the bank. Defendant was also seen inside the bank as he stood by the front doors while Ms. Sharpe cashed the $9,000 cashier's check she received at the first bank. Later that day, surveillance footage showed Ms. Sharpe at the Bank of America on Brentwood where she withdrew $500 cash. Finally,

---

887 F.2d 1388, 1393 (10th Cir. 1989) (citing <u>Marshall v. Lonberger</u>, 459 U.S. at 431-32; <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." <u>Id</u>. (citing <u>Brown v. Allen</u>, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). <u>Cornell v. Nix</u>, 976 F.2d 376, 382 (8th Cir. 1992).

surveillance footage showed Ms. Sharpe making a transaction at the Bank of America in Warson Woods where she withdrew $5,000. Ms. Sharpe gave the money she withdrew from the several banks to Defendant.

At some point, Ms. Sharpe noticed that Mr. Wilks was no longer in the vehicle with her and Defendant. Later she observed Mr. Wilks driving behind them in a different car. While Mr. Wilks was following them, Ms. Sharpe saw that Defendant maintained contact with Mr. Wilks using a "radio or telephone" device. During Defendant and Mr. Wilks' conversation, Ms. Sharpe overheard Defendant mention the name "Callahan."

Throughout the encounter, Defendant did not explicitly threaten Ms. Sharpe and Ms. Sharpe never actually saw a weapon. However, while traveling to the several banks, Defendant drove with his right hand and kept his left hand in his pocket which led Ms. Sharpe to believe that he possessed a weapon. Additionally, when warning Ms. Sharpe not to make any conversation with the tellers at the bank, Defendant indicated that she needed to "keep quiet because something would happen ... to [her] family or whatever."

At various times throughout the day, Ms. Sharpe told Defendant that she was hungry, but Defendant did not give her anything to eat. Ms. Sharpe also told Defendant on three or four occasions that she wanted to go home, to which Defendant replied that they "would go home later."

Finally, after Ms. Sharpe made her last transaction at the Warson Woods Bank of America, Defendant drove Ms. Sharpe to a location in downtown St. Louis where Defendant exited the vehicle and ran to the car that had previously been following them. Subsequently, Ms. Sharpe used a passerby's cellular phone to call the police. Soon thereafter, Detective Michael Regan arrived and interviewed Ms. Sharpe. Ms. Sharpe described the events of the day to Detective Regan, and based upon that information, Detective Regan began his investigation. Detective Regan seized the "microphone pen" that had been placed on Ms. Sharpe, and he reviewed the surveillance footage and business records from the banks Ms. Sharpe had visited. Because part of the robbery occurred outside of his

jurisdiction, Detective Regan contacted Detective James Simpson from the Brentwood Police Department who later interviewed Ms. Sharpe and assisted in the investigation.

## B. Mr. Tidwell - Attempted Stealing Over $25,000

About one and a half years later, on April 5, 2005, Mr. Tidwell reported to the police that two men posing as police officers were attempting to steal money from him. Detective Thomas Neske responded and Mr. Tidwell informed him that two men had visited his house that morning, displayed badges, and identified themselves as "Callahan" and "Stone." Mr. Tidwell said that the men asked him "[t]o obtain money from his personal checking account and hand it over to them." Mr. Tidwell also indicated that the men were going to contact him by phone that evening, and, subsequently, Detective Neske arranged to have a recording device placed on Mr. Tidwell's telephone. That night, a man identifying himself as "Sergeant Stone" called and instructed Mr. Tidwell to go to his bank in the morning, withdraw $9,000 in cash, and obtain two cashier's checks for $9,000 apiece.

The next day, Detective Neske staked out Mr. Tidwell's bank and arrested Defendant and Mr. Wilks in the parking lot of a service station nearby. When searching Defendant, Detective Neske discovered a piece of paper in Defendant's shirt pocket with Mr. Tidwell's name, address, and telephone number written on it. In Defendant's suit coat pocket, Detective Neske retrieved a leather badge case containing a photo identification card and a gold badge with the inscription "Special Police." Defendant's photograph was on the identification card, which indicated that the badge belonged to "Lieutenant Richard Callahan." Also in Defendant's possession was $2,050 in cash and a Tennessee driver's license issued in Defendant's name. On Mr. Wilks, the police seized a pair of handcuffs, a "Private Investigator" badge, $1,596 in cash, and a Tennessee driver's license issued in Mr. Wilk's name. In the car occupied by Defendant and Mr. Wilks, the police found a receipt for the Travelodge motel with Mr. Tidwell's name and partial address written on it, a two-way personal radio, and, Tennessee license plates.

Following the arrest, Detective Neske entered Defendant's and Mr. Wilks' information, along with information regarding the encounter with Mr. Tidwell, into the Missouri Uniform Law Enforcement System ("MULES"), a computer system that asks other police departments whether incidents have been reported that involve persons matching the same description. Detective Regan, who had access to MULES, read Detective Neske's message and noticed that the crime against Mr. Tidwell was similar to the crime perpetrated against Ms. Sharpe. Specifically, he noticed that the suspects were two men who had instructed an elderly victim to withdraw large sums of money from a bank and that one of the perpetrators possessed a badge and ID with the name "Callahan." Detective Regan remembered that, in 2003, Ms. Sharpe told him that the heavier man in the front seat "showed her a badge," and she "remembered seeing the name Callahan on it."

Subsequently, on April 20, 2005, Detective Regan visited Ms. Sharpe at her home and showed her two photographic lineups, one containing Defendant's photograph and one containing co-defendant Wilks' photograph. Ms. Sharpe identified Defendant as the heavier man who drove her to the several banks and recognized Mr. Wilks as the man who had been in the back seat at the beginning of the encounter.

## C. Ms. Stith - Stealing By Deceit & False Impersonation of a Police Officer

On November 23, 2005, two men came to Ms. Stith's apartment complex and rang her intercom. Ms. Stith answered and one of the men identified himself as "Sergeant James" and explained that he wanted to talk about certain fraudulent $20 checks Ms. Stith had cashed. Once inside her apartment, the man told Ms. Stith that he and his partner were investigating counterfeit money and that they needed her to withdraw money from her bank account so they could compare serial numbers. Believing that she was assisting the police, Ms. Stith complied and went with the men to two banks where she withdrew $1,900 from one bank and $5,150 from the other. Ms. Stith gave the money she had withdrawn to the first man, and the two men then drove Ms. Stith home.

In December 2005, Ms. Stith went to the police to report the incident. Later, Ms. Stith identified Defendant in bank surveillance videos, a photographic lineup, and a live lineup as the man who identified himself as "Sergeant James." Ms. Stith again identified Defendant at trial as the man who posed as a police officer and took her money.

D. Trial

At trial, only Ms. Stith was available to testify in court. Ms. Sharpe was hospitalized at the time of the trial and the State introduced a videotaped deposition taken on August 17, 2006 in lieu of her live testimony. The State also called Detective Regan and Detective Simpson to testify about their investigation of Ms. Sharpe's robbery. Mr. Tidwell died in a car accident prior to trial and the State's primary witness for the charges involving him was Detective Neske. The defense presented no evidence.

At the close of the evidence, the jury found Defendant guilty on all counts. Specifically, with regard to Ms. Sharpe, the jury found Defendant guilty of second degree robbery, kidnapping, and false impersonation of a police officer; with regard to Mr. Tidwell, the jury found Defendant guilty of attempted stealing over $25,000; and, with regard to Ms. Stith, the jury found Defendant guilty of stealing by deceit and false impersonation of a police officer. The trial court also submitted four counts against co-defendant Wilks for the crimes against Ms. Sharpe and Mr. Tidwell, but the jury found Mr. Wilks not guilty on all counts.

On November 30, 2007, after determining that Defendant was a prior and persistent offender, the trial court sentenced Defendant to consecutive terms of: (1) fifteen years for second degree robbery, (2) fifteen years for kidnapping, (3) one year for false impersonation, (4) five years for attempted stealing over $25,000, (5) five years for stealing by deceit, and (6) one year for false impersonation.

McGee, 284 S.W.3d at 695-98.

Petitioner raised 11 claims on appeal: (1) the trial court plainly erred in accepting the jury's verdicts because they were inconsistent in that they acquitted Mr. Wilks while convicting Petitioner; (2) the trial court plainly erred in accepting the jury's verdicts because they were inconsistent in that the jury found that Petitioner both robbed Ms. Sharpe and obtained her money by impersonating a police officer; (3) Detective Neske's testimony regarding statements from Mr. Tidwell was inadmissible hearsay and violated the Confrontation Clause; (4) the trial court plainly erred in admitting Detectives Simpson's and Regan's testimony regarding statements from Ms. Sharpe because it was inadmissible hearsay; (5) the trial court plainly erred in accepting the jury's verdict convicting Petitioner of second-degree robbery because there was insufficient evidence that Petitioner threatened Ms. Sharpe with force or took Ms. Sharpe's money; (6) the trial court plainly erred in accepting the jury's verdict convicting Petitioner of attempted stealing because there was insufficient evidence; (7) the trial court plainly erred in finding Petitioner was a prior offender; (8) the trial court plainly erred in finding Petitioner was a persistent offender; (9) the trial court erred in entering a written judgment imposing a seven-year sentence for stealing because the court orally sentenced Petitioner to five years for stealing; (10) the trial court erred by allowing the prosecution to refer to Petitioner's aliases during voir dire; and (11) the trial court plainly erred in admitting Ms. Sharpe's video deposition into evidence

because it was inadmissible hearsay and violated the Confrontation Clause. (Resp. Ex. B at 31-41).

The Missouri Court of Appeals found that (1) the trial court erred in finding McGee was a persistent offender, and (2) the trial court erred by entering a written sentence inconsistent with the oral sentence of five years for stealing. McGee, 284 S.W.3d at 713. Accordingly, the court corrected the sentence and judgment to remove the reference to persistent offender and to designate a five year sentence for stealing. Id. The court rejected Petitioner's remaining claims and affirmed Petitioner's convictions and sentences in all other respects. Id. at 713-14.

Petitioner filed a motion for post-conviction relief, which the motion court denied. (Resp. Ex. D at 2). Petitioner raised three claims on appeal: (1) trial counsel was ineffective for failing to file a timely notice of alibi, to endorse Petitioner's wife as a witness, and for failing to make an offer of proof as to her testimony; (2) trial counsel was ineffective for failing to endorse and call Petitioner's co-defendant to testify; and (3) trial counsel was ineffective for failing to ask the trial court to strike Detective Neske's testimony regarding Mr. Tidwell's statements. (Resp. Ex. E at 12-17). The Missouri Court of Appeals rejected Petitioner's claims and affirmed the denial of post-conviction relief. (Resp. Ex. G).

In his § 2254 Petition, Petitioner raises the following claims for habeas relief:

**1.** The trial court erred in accepting the jury's verdicts because they were inconsistent in that they acquitted Mr. Wilks while convicting Petitioner;

**2.** The trial court erred in accepting the jury's verdicts because they were inconsistent in that the jury found that Petitioner both robbed Ms. Sharpe and obtained her money by impersonating a police officer;

**3.** The trial court erred in admitting Detective Neske's testimony regarding statements from Mr. Tidwell because this testimony was inadmissible hearsay and violated the Confrontation Clause;

**4.** The trial court erred in admitting Detectives Simpson's and Regan's testimony regarding statements from Ms. Sharpe because these statements were inadmissible hearsay;

**5.** The trial court erred in accepting the jury's verdict convicting Petitioner of second-degree robbery because there was insufficient evidence that Petitioner threatened Ms. Sharpe with force or took her money;

**6.** The trial court erred in accepting the jury's verdict convicting Petitioner of attempted stealing because there was insufficient evidence;

**7.** The trial court erred in finding Petitioner a prior offender.

**8.** The trial court erred in finding Petitioner was a persistent offender;

**9.** The trial court erred in entering a written judgment imposing a seven-year sentence for stealing because the court orally sentenced Petitioner to seven years for stealing;

**10.**    The trial court erred in permitting the prosecution to refer to Petitioner's aliases during voir dire;

**11.**    The trial court erred in admitting Ms. Sharpe's video deposition;[2]

**12.**    Petitioner's trial counsel was ineffective for failing to file a timely notice of alibi, endorse Petitioner's wife as a witness, and to make an offer of proof as to her testimony;

**13.**    Petitioner's trial counsel was ineffective for failing to endorse Petitioner's co-defendant as a witness; and

**14.**    Petitioner's trial counsel was ineffective for failing to ask the trial court to strike Detective Neske's testimony regarding Mr. Tidwell's statements.

## II.
## PROCEDURAL DEFAULT

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby

---

[2] Petitioner has not stated Grounds 1 through 11 on the court approved form. Rather, for Grounds 1 through 11, he has attached to that form portions from his direct appeal brief. Section 2254 requires that the petition "shall specify all the grounds for relief which are available to the petitioner." See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990) (holding that a habeas petition must specify the grounds upon which relief is sought). In Adams, 897 F.2d at 333, the court held that, where the habeas petitioner generally referenced transcripts, case records, and briefs on appeal, he "patently" fail[ed] to comply" with the specificity requirements of § 2254. Indeed, a traverse is not a proper means to raise additional grounds for relief. See Cacoperdo, 37 F.3d at 507. Thus, Petitioner, arguably, has not complied with the specificity requirement of § 2254 in regard to Grounds 1 through 11. Nonetheless, in the interest of justice, the court will address Grounds 1 through 11.

affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. Id. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Respondent argues that Petitioner has procedurally defaulted Grounds for habeas relief which the Missouri appellate court reviewed for plain error. Authority within the Eighth Circuit, however, is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit has acknowledged that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas

petitioner, allowing collateral review by this court.'" Hornbuckle v. Groose 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)).  In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error.  More recently, in Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error.  On doing so, the court considered "'whether any manifest unjustice resulted'" from the alleged error.  Id. (quoting Kilmartin v. Dormire, 161 F.3d 1125, 1127 (8th Cir. 1998)).

However, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error."  Also, in Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011), the Eighth Circuit held that "when faced with conflicting panel opinions, the earliest opinion must be followed, 'as it should have controlled the subsequent panels that created the conflict.'"  (quoting T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006)).  Because the court finds, for the reasons stated below, that Petitioner's habeas claims are not cognizable pursuant to federal habeas review or they are without substantive merit, the court need not determine whether

claims which the Missouri appellate court reviewed for plain error are procedurally barred. See also James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). Thus, the court will consider below all Grounds for habeas relief raised by Petitioner.

In response to Respondent's argument that Petitioner has procedurally defaulted claims that he raised only for plain error review on direct appeal, Petitioner has submitted the affidavit of a police officer, which Petitioner suggests establishes his actual innocence.[3] (Doc. 16). Given that the court has not found that Petitioner has procedurally defaulted these claims, Petitioner's actual innocence is not relevant to the court's consideration of his § 2254 Petition. See Schlup v. Delo, 513 U.S. 298 (1995) (actual innocence is required to meet the miscarriage-of-justice exception to procedural default); McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992) ("[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and

---

[3] Bryant Morris, attests in his affidavit that he was a police officer with the St. Louis Airport Police Department; he was with the Department in 2005 and 2006; in 2005, the Department investigated the robbery and extortion of an elderly lady, Ms. Stith, at the USBank, Airport Branch; officers in his Department obtained an arrest warrant for Petitioner and Wilks; after taking custody of Petitioner and Wilks from the Brentwood, Missouri, Police Department, Airport Police determined that Petitioner was not the suspect in still photographs they had; Airport Police returned Petitioner and Wilks to the St. Louis City Police, who said they wanted to talk to them; and the Airport Police did not proceed further against Petitioner and Wilks. (Doc. 16 at 2).

convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'").

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The court finds that Petitioner's § 2254 Petition is timely. As such, the court finds that Petitioner's § 2254 Petition is properly before the court.

## III.
## STANDARD OF REVIEW

"In the habeas setting, a federal court is bound by the AEDPA[4] to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court

---

[4] The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); <u>Ryan v. Clarke</u>, 387 F.3d 785, 790 (8th Cir. 2004).

## IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove

that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). . . . .

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all

too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  (citation omitted).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted).  There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.  (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a <u>Strickland</u> claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review."  <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  The Court further explained that "because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  <u>Id.</u> (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

The Supreme Court has articulated an exception to the rule articulated in <u>Strickland</u> that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Mickens v. Taylor, 535 U.S. 162, 166 (2002) (citing Strickland, 466 U.S. at 694).

The Court held in Mickens that:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. See Cronic, supra, at 658-659, 104 S.Ct. 2039; see also Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Gideon v. Wainwright, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. Cronic, supra, at 659, n.26, 104 S.Ct. 2039.

Id.

Taking the AEDPA and Strickland together establishes a "doubly deferential" standard of review in § 2254 cases. Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1410 (2011)).

## V.
## DISCUSSION

**Grounds 1 and 2 - Consistency of the Jury's Verdicts:**

In Ground 1, Petitioner claims the trial court erred in accepting the jury's verdicts because they were inconsistent in that they acquitted Mr. Wilks and convicted Petitioner of the same offenses for which Mr. Wilks was acquitted. In support of Ground 1, Petitioner argues that the verdict directors failed to comply with Missouri law requiring the director to allow the jury to find Petitioner acted

alone or with the aid of his co-defendant.  In Ground 2, Petitioner claims that the

trial court erred in accepting the jury's verdicts because they were inconsistent in

that the jury found that Petitioner both robbed Ms. Sharpe and obtained her money

by impersonating a police officer.  (Doc. 1 at 8-17).

Upon addressing the issues of Grounds 1 and 2, the Missouri appellate court

held:

> The trial court has an obligation to examine the verdicts returned by the jury and ensure that they are consistent.  Id. at 883. "When a jury attempts to return verdicts that are inconsistent, the circuit court should reject the jury's verdict and send it back to the jury for further deliberation to resolve the inconsistency."  Id.  Whether a jury's verdicts are inconsistent requiring the trial court to reject the verdicts is a question of law reviewed de novo.  State v. Bell, 62 S.W.3d 84, 93 (Mo. App. W.D. 2001).

> First, Defendant contends that the trial court erred in accepting the jury's verdicts finding him guilty of second degree robbery, kidnapping, impersonation of a police officer, and attempted stealing over $25,000 because the jury found co-defendant Wilks not guilty on those same counts.  Defendant argues that this case is analogous to State v. Flemons where the appellate court set aside the defendant's conviction after concluding that the jury's verdicts were inconsistent. 144 S.W.3d at 883.  In Flemons, the defendant was charged with possessing and intending to distribute a controlled substance and unlawful use of a weapon.  Id. at 881.  To reach a guilty verdict on the unlawful use of a weapon charge, the jury was required to find that the defendant was not traveling in a continuous journey peaceably through Missouri.  Id.  The jury instruction further stated, "[a]s used in this instruction, an individual is not 'traveling peaceably' if he is committing the offense of possession of more than five grams of marijuana with the intent to distribute, deliver, or sell."  Id. at 882. The Flemons court concluded that, because the "unlawful use of a weapon charge and Flemons' not traveling peaceably were dependent on Flemons' being found guilty of possession of marijuana with the

intent to distribute[,]" the jury's verdicts finding the defendant guilty of the weapon offense but not guilty of the drug offense were inconsistent. <u>Id.</u> at 882–83.

In the present case, the verdict directors for the counts against Defendant and the counts against co-defendant Wilks both required the jury to find that Defendant committed all of the conduct elements of the crimes. The verdict directors differed, however, as to the mens rea element in that, to find Defendant guilty, the jury was required to find "that with the purpose of promoting or furthering the commission of [the charged offense], the defendant Thomas C. (T.C.) McGee acted together with or aided Andrea Wilks in committing the offense," and, to find co-defendant Wilks guilty, the jury was required to find "that with the purpose of promoting or furthering the commission of [the charged offense], the defendant Andrea Wilks acted together with or aided Thomas C. (T.C.) McGee in committing the offense." Therefore, unlike <u>Flemons</u>, the charges against Defendant were not dependent on the charges against Mr. Wilks because the jury could find that Defendant, acting with Mr. Wilks, committed all the conduct elements of the charged offenses but that Mr. Wilks, while present, lacked the requisite mens rea. <u>See</u> <u>id.</u> at 882 ("If the offense for which the defendant was acquitted requires proof of a unique element, distinct from the elements of the crime for which he was found guilty, the verdicts cannot be inconsistent.").

Moreover, even if the jury's verdicts were inconsistent, Defendant failed to establish that a manifest injustice occurred as a result. "An inconsistent verdict among several charges does not require reversal if there is sufficient evidence to support the finding of guilt on each charge." <u>State v. Bratton</u>, 92 S.W.3d 275, 278 (Mo. App. W.D. 2002) (citing <u>State v. Clemons</u>, 643 S.W.2d 803, 805 (Mo. banc 1983)). Based on the evidence in this case, a rational juror could have found that Defendant committed all of the elements of the offenses against Ms. Sharpe and Mr. Tidwell and that Mr. Wilks assisted Defendant with the purpose of furthering the commission of the offenses.

Defendant also claims that the trial court erred in that the verdict directors failed to comply with the requirements of the Notes on Use to MAI-CR 304.04. The verdict directors for the offenses

involving both Defendant and Mr. Wilks were modified pursuant to MAI-CR 304.04 to submit the case under aider and abettor liability. The Notes on Use caution that "[s]ince MAI-CR 304.04 involves imputing the conduct of another person to the defendant, it need not be used where the evidence shows that the defendant, by his own conduct, committed all the elements of the offense and there is evidence that another person was involved." Here, the evidence showed that Defendant committed all of the elements of the charged offenses, and therefore, including the aider and abettor instruction put an "additional and unnecessary burden on the prosecution." MAI-CR 304.04 Notes on Use 5(d). When the prosecution elects to assume this burden, the Notes on Use provide that the modified verdict director "must state 'the defendant acted alone or with the aid of ...'" (emphasis added). Here, the verdict director omitted the language which would have allowed the jury to convict Defendant even if he acted alone.

A trial court's submission of a jury instruction that violates the Notes on Use under MAI–CR constitutes error, and its prejudicial effect is judicially determined. State v. Livingston, 801 S.W.2d 344, 348 (Mo. banc 1990). Although the trial court in this case erred by giving an instruction in violation of MAI–CR 304.04 Notes on Use, "[a] criminal jury instruction that puts an additional burden on the state beyond that which is legally required in order to establish guilt, is not prejudicial to the defendant." Id. at 350. Here, the jury instructions required the State to establish all of the elements of the charged offenses as well as placed the "additional and unnecessary burden" on the State to prove aider and abettor liability. Under these facts, the deviation from MAI–CR 304.04 Notes on Use did not prejudice Defendant. See id.

Second, Defendant contends that the trial court erred in accepting the jury's verdicts finding him guilty of both second degree robbery and impersonating a police officer because those counts included inconsistent elements pertaining to the method in which Defendant induced Ms. Sharpe to withdraw money from her bank accounts. Specifically, to convict Defendant of second degree robbery, the jury was required to find that Defendant took U.S. currency from Ms. Sharpe and "in doing so threatened the immediate use of physical force on or against Maryland [sic] Sharpe for the

purpose of overcoming resistance to the taking of the property, forcing Maryland [sic] Sharpe to withdraw U.S. currency from her bank account." In contrast, to find Defendant guilty of false impersonation, the jury was required to find that Defendant held himself out as a police officer, and that "in that pretended capacity caused Maryland [sic] Sharpe to withdraw U.S. Currency from her bank account in reliance upon his pretended official authority[.]"

Contrary to Defendant's position, the jury's guilty verdicts on these two counts were not inconsistent as the jury could have reasonably concluded that Ms. Sharpe initially withdrew money from her bank in reliance on Defendant's pretended official authority, but that as the incident progressed, Ms. Sharpe turned over the money she withdrew from the other banks because of Defendant's threat of force. Moreover, the two means for inducing Ms. Sharpe to withdraw and surrender her money, though different, are not mutually exclusive, in that the jury could have also concluded that Ms. Sharpe was compelled both by Defendant's pretended authority and by his threat of force against her. Point denied.

McGee, 284 S.W.3d at 708-10.

First, to the extent Petitioner claims that his and Wilk's verdicts were inconsistent and that it was inconsistent for him to be found guilty of both robbery of Ms. Sharpe and obtaining her money by impersonating an officer, Petitioner's claims are not cognizable pursuant to federal habeas review, as the Supreme Court has held that inconsistent verdicts do no violate the Constitution. See Harris v. Rivera, 454 U.S. 339, 345, 348 (1981) (per curiam) ("Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency *between verdicts on separate charges against one defendant*, . . . , and also with respect to *verdicts that treat codefendants in a joint trial*

*inconsistently*, . . . .  Even assuming that [co-defendant's] acquittal was logically inconsistent with the conviction of respondent, respondent, who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that [co-defendant] was acquitted.") (emphasis added).  See also Nesbitt v. Hopkins, 86 F.3d 118, 121 (8th Cir. 1996).

As for Petitioner's suggestion that the verdict directors failed to comply with Missouri law, such a claim is likewise not cognizable pursuant to federal habeas review, as issues concerning the interpretation and application of state law are not cognizable in federal habeas review.  See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).  Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a

federal court is "bound by a State's interpretation of its own statute and will not substitute [a federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."

Second, even if Petitioner's claims based on inconsistent verdicts were cognizable pursuant to federal habeas review, the only relevant question would be whether the evidence was constitutionally sufficient to support each count of Petitioner's conviction. Cf. id. ("A review of Supreme Court cases involving allegedly inconsistent verdicts persuades us that, in a single trial of multiple charges, the only relevant question is whether the evidence is constitutionally sufficient to support each count of conviction."). Upon considering Petitioner's claim of inconsistent verdicts, the Missouri appellate court applied such a standard and found that the evidence was sufficient to convict Petitioner of second degree robbery, kidnapping, impersonation of a police officer, and attempted stealing over $25,000. Thus, to the extent Grounds 1 and 2 are cognizable pursuant to federal habeas review, the court finds that the decision of the Missouri appellate court, in regard to these claims, is not contrary to federal law and that it is a reasonable interpretation of federal law. See Garner, 368 U.S. at 166. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case upon its consideration of the issues of Petitioner's Grounds 1 and 2. See

Williams, 529 U.S. at 407-408, 413.  As such, the court finds that Petitioner's Grounds 1 and 2 are without merit and that habeas relief on their basis should be denied.

**Ground 3 – Confrontation Clause Violation:**

In Ground 3, Petitioner claims Detective Neske's testimony regarding statements from Mr. Tidwell was inadmissible hearsay and violated the Confrontation Clause.  (Doc. 1 at 18-26).  Upon addressing the issue of Ground 3, the Missouri appellate court held:

> Defendant argues that the trial court erred in permitting Detective Neske to testify to Mr. Tidwell's out-of-court statements because the testimony constituted inadmissible hearsay and violated his rights under the Sixth Amendment's Confrontation Clause. Specifically, Defendant contends that the trial court erred when admitting, over his objection, Detective Neske's testimony concerning Mr. Tidwell's statements that two men with police badges identified themselves as police officers named "Stone" and "Callahan" and that the men asked Mr. Tidwell "[t]o obtain money from his personal checking account and hand it over to them."

> A trial court is vested with broad discretion in determining whether to exclude or admit evidence at trial.  State v. Forrest, 183 S.W.3d 218, 223 (Mo. banc 2006).  "An abuse of discretion is found when the decision to admit or exclude the challenged evidence is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration."  State v. Barriner, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006).  Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative.  State v. Barriner, 34 S.W.3d 139, 150 (Mo. banc 2000).  Conversely, we review challenges as to whether admitted evidence violates a defendant's rights under the Confrontation Clause de novo.  Justus,

205 S.W.3d at 878. Properly preserved Confrontation Clause violations are presumed prejudicial. Id. at 881.

Initially, we note that because Mr. Tidwell died in an automobile accident and was unable to testify at trial, if his out-of-court statements were admitted for the truth of the matter asserted, they would constitute inadmissible hearsay. See State v. Edwards, 116 S.W.3d 511, 532 (Mo. banc 2003). Additionally, the admission of Mr. Tidwell's unconfronted statements for their truth would also violate Defendant's rights under the Confrontation Clause. Id.

The trial court, however, did not permit Detective Neske to testify to Mr. Tidwell's out-of-court statements for their truth, but rather admitted the statements for the limited purpose of explaining Detective Neske's subsequent conduct. "An out-of-court statement offered not for the truth of the matter asserted, but to explain subsequent police conduct, is not hearsay and is, therefore, admissible, assuming it is relevant." State v. Simmons, 233 S.W.3d 235, 238 (Mo. App. E.D. 2007) (quotation omitted). "Under this rule the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities." State v. Brooks, 618 S.W.2d 22, 25 (Mo. banc 1981). Moreover, the use of an unavailable witness's testimonial statements for non-hearsay purposes, such as explaining a police officer's subsequent conduct, is not precluded by the Confrontation Clause. Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354. ("The [Confrontation] Clause [ ] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

While Defendant acknowledges that police officers may offer out-of-court statements in order to explain their subsequent conduct, he argues that Detective Neske's testimony should not have been admitted because it directly linked him to the crime. Missouri courts have cautioned that out-of-court statements connecting the defendant directly to the crime may constitute inadmissible hearsay requiring a new trial. See, e.g., State v. Hoover, 220 S.W.3d 395, 401-08 (Mo. App. E.D. 2007); State v. Shigemura, 680 S.W.2d 256, 257-58 (Mo. App. E.D. 1984). The underlying concern in these cases derives from the fact that the subsequent conduct exception to the hearsay rule is

"susceptible to abuse" and "'[a]llowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the Sixth Amendment and the hearsay rule.'" <u>Hoover</u>, 220 S.W.3d at 407 (quoting <u>State v. Garrett</u>, 139 S.W.3d 577, 582 (Mo. App. S.D. 2004); <u>U.S. v. Silva</u>, 380 F.3d 1018, 1020 (7th Cir. 2004)). To prevent this type of abuse, out-of-court-statements that implicate the defendant in the crime are admissible only to the extent they are necessary to explain the subsequent police conduct testified to at trial. <u>See State v. Murray</u>, 744 S.W.2d 762, 773 (Mo. banc 1988).

Here, Detective Neske testified that Mr. Tidwell informed him that two men claiming to be police officers and identifying themselves as "Stone" and "Callahan" were attempting to steal money from him. Detective Neske added that Mr. Tidwell said the men wanted him to withdraw money from his bank account and they would contact him that evening. Detective Neske noted that based upon Mr. Tidwell's statements he arranged to have a recording device placed on Mr. Tidwell's telephone. Later, the men called Mr. Tidwell, and the caller, who identified himself as "Sergeant Stone," instructed Mr. Tidwell to arrive at his bank the next morning around 9:15 a.m. and to withdraw $9,000 in cash and obtain two $9,000 cashier's checks. Ultimately, "Sergeant Stone's" telephone conversation, which corroborated Mr. Tidwell's previous statement, led Detective Neske to stake out Mr. Tidwell's bank where he arrested Defendant. Clearly, Detective Neske's testimony regarding Mr. Tidwell's statements was limited to providing the background and context necessary to explain the resulting investigation.

To the extent that Defendant claims that he was prejudiced by Mr. Tidwell's statement regarding the use of the name "Callahan," Defendant failed to request the trial court to strike that portion of Detective Neske's testimony and to instruct the jury to disregard it. "When evidence is relevant but parts of it are claimed to be prejudicial, the attorney objecting has a duty to ask the court for specific relief from the prejudicial portion of the evidence[,]" and "[f]ailure to do so precludes appellate review." <u>State v. Dunn</u>, 817 S.W.2d 241, 243 (Mo. banc 1991). Accordingly, any specific claim of prejudice arising from Mr. Tidwell's statement with respect to the

name "Callahan" was not properly preserved for appeal. See id. Point denied.

McGee, 284 S.W.3d at 701-703.

Upon addressing Ground 3, the Missouri appellate court also noted that the rights protected by the Confrontation Clause in the Missouri Constitution are the same as the rights protected by the Sixth Amendment to the United States Constitution. The court further noted that Crawford v. Washington, 541 U.S. 36, 53-54 (2004), holds that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination," and that Davis v. Washington, 547 U.S. 813, 822 (2006), holds that "[u]nconfronted statements 'are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" McGee, 284 S.W.3d at 701 n.2, n.3.

First, to the extent Petitioner challenges the trial court's evidentiary ruling, the United States Supreme Court held in Estelle v. McGuire that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further

held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition.  Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights."  Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004) (citing Estelle, 502 U.S. at 68); Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).  See also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) ("The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'") (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988)); Sweet v. Delo, 125 F.3d 1144, 1157-58 (8th Cir. 1997) (holding that the exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the petitioner] of fundamental fairness'") (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)); Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988) (holding that to

justify the grant of habeas corpus, the error must be "so 'gross'… 'conspicuously prejudicial'… or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process"); Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984) (holding that questions concerning admissibility of evidence are matters of state law and are not reviewable in a federal corpus proceeding unless the asserted error infringed a specific constitutional protection or was so prejudicial as to deny due process); Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) ("Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.").

The Eighth Circuit held in Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995), in regard to § 2254 review by a federal court:

> [W]e will reverse a state court evidentiary ruling only if the "petitioner ⋯ show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). … Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use

the testimony elicited. Hamilton, 809 F.2d at 470. Cf. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir. 1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

In any case, under federal law, "the admission of evidence is a matter of discretion for the trial court, and the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion." United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996); United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996)). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. See e.g., Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "particularly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Additionally, the Eighth Circuit has held that "[r]ulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. '[O]nly the exclusion of critical, reliable and highly probative evidence will violate due process.'" Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000) (quoting Sweet v. Delo, 125 F.3d 1144, 1158 (8th Cir. 1997)).

"The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (quoting Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir. 1988)).

First, the court finds that the Missouri appellate court's decision that the admission of Officer Neske's allegedly objectionable testimony did not violate Missouri evidentiary law, in particularly, Missouri hearsay rules, is not so grossly erroneous that it fatally infected the entire trial. Officer Neske's testimony regarding Mr. Tidwell's statements was admitted to explain why Detective Neske was at the bank where he arrested Petitioner rather than for the truth of Mr. Tidwell's statements.

Further, as considered by the Missouri appellate court, federal law, as articulated in Crawford, 541 U.S. at 59 n.9, provides that the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. Given that, when finding no Confrontation Clause violation, the Missouri Appellate Court considered that Officer Neske's testimony was admitted not for the truth of what Mr. Tidwell said but for purposes of explaining Officer Tidwell's actions, this court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 3 is not contrary to

federal law and that it is a reasonable interpretation of federal law. See Crawford, 541 U.S. at 59 n.9. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 3 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on this basis should be denied.

## Ground 4 – Ms. Sharpe's Out-of-Court Statements Admitted Through Police Officers:

In Ground 4, Petitioner claims the trial court erred in admitting Detectives Simpson's and Regan's testimony regarding statements from Ms. Sharpe because these statements were inadmissible hearsay. Petitioner argues the trial court should have declared a mistrial based on the detectives' testimony; that their testimony was the only evidence supporting the essential elements of robbery in the second degree; and that he was prejudiced by the detectives' objectionable testimony. (Doc. 1 at 26-32). Upon addressing the issue of Petitioner's Ground 4, the Missouri appellate court held:

> Defendant claims that the trial court erred in permitting police officers to testify to Ms. Sharpe's out-of-court statements because the testimony constituted inadmissible hearsay. At trial, police officers testified about the crimes against Ms. Sharpe recounting many of the statements Ms. Sharpe made to them about her encounter with Defendant. Because Ms. Sharpe was unavailable to testify at trial, her testimony was introduced through her videotaped deposition at which all parties were present and had an opportunity to cross-examine Ms. Sharpe. Defendant claims that the police officers' testimony of the following out-of-court statements were improperly admitted to bolster Ms. Sharpe's deposition testimony and "suppl[y] critical details

linking [Defendant] to the crimes": (1) Ms. Sharpe said that she cashed the $9,000 cashier's check obtained at the Bank of America on Lindell, (2) Ms. Sharpe, after viewing a photo lineup in April 2005, identified Defendant as the "heavier" man who drove her car to the several banks and took her money, (3) Ms. Sharpe told the detectives that Defendant "showed a badge that said Callahan on it," (4) Ms. Sharpe said that Defendant "grabbed" the money she withdrew from the several banks, (5) Ms. Sharpe noticed that Defendant "had his hand inside his pocket and kind of motioned like he had some type of weapon in his pocket," and (6) Ms. Sharpe said that Defendant drove while "speaking on his cell phone and referring to the person on the other end ... as his commander."

Defendant concedes that he failed to object to the detective's testimony at trial or include the challenged statements in his motion for a new trial. Accordingly, the alleged error is not preserved for appeal and our review is limited to plain error. State v. Lucio, 247 S.W.3d 131, 134 (Mo. App. S.D. 2008). To obtain relief under the plain error rule, a defendant must show not only that the trial court erred, "'but also [that] the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected.'" Id. (quotation omitted). "'Plain errors are those which are evident, obvious, and clear.'" Id. (quotation omitted).

"An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." State v. Goodwin, 43 S.W.3d 805, 818 (Mo. banc 2001). Here, all of the out-of-court statements challenged by Defendant were cumulative of other properly admitted evidence. First, the fact that Ms. Sharpe cashed the $9,000 cashier's check was independently proved through other evidence including the cashier's check signed by Ms. Sharpe and Ms. Sharpe's withdrawal slip for $9,000, as well as police officer testimony that review of the bank records revealed that Ms. Sharpe received $9,000 cash at the downtown Bank of America.

Second, because one of the officers testified that he personally witnessed the identification procedure at the 2005 photo lineup, his testimony that Ms. Sharpe identified Defendant was independently

admissible to prove that Ms. Sharpe did in fact identify Defendant at the photo lineup.  See Olds v. State, 891 S.W.2d 486, 489 (Mo. App. E.D. 1994).  Consequently, testimony to the same effect was cumulative.

Finally, the remainder of the challenged statements were consistent with, and cumulative of, Ms. Sharpe's deposition testimony, in which she testified that:  (1) Defendant "had a badge that he showed as a policeman" and at one point mentioned the name "Callahan," (2) she "g[a]ve [the] money to one of the men," (3) Defendant "kept his hand in his pocket" which led Ms. Sharpe to believe "it might have been a weapon," and (4) Defendant and the other man "were communicating together [by radio or telephone] on what was going on and everything."  Point denied.

McGee, 284 S.W.3d at 703-704.

First, as stated above in regard to Petitioner's Ground 3, in habeas proceedings, it generally is not the province of a federal habeas court to review of a state court's evidentiary ruling; a state court's evidentiary ruling violates due process only where the asserted error is so prejudicial that it affected the fundamental fairness of the petitioner's state trial.  See Estelle, 502 U.S. at 67-68; Sweet, 125 F.3d at 1157-58; Anderson, 44 F.3d at 679.  Because the officers' challenged statements were consistent with, and cumulative of, Ms. Sharpe's deposition testimony, the court finds that the errors of which Petitioner complains in Ground 4 are not so prejudicial so as to be a denial of due process.  As such, Petitioner's claim challenging the State court's evidentiary rulings which permitted the officers to testify regarding Ms. Sharpe's statements is not cognizable pursuant to federal habeas review.

Second, federal law provides that admission of hearsay is harmless where the hearsay is cumulative. See United States v. Robinson, 639 F.3d 489, 493 (8th Cir. 2011) ("The admission of hearsay evidence that is cumulative of earlier trial testimony by the declarant or cumulative of other hearsay evidence to which no objection was made is not likely to influence the jury and is therefore harmless error.") (quoting United States v. Londondio, 420 F.3d 777, 789 (8th Cir. 2005)); United States v. Johnson, 722 F.2d 407, 410 (8th Cir. 1983) (finding admission of hearsay evidence harmless where evidence was cumulative) (citing Minor v. United States, 375 F.2d 170 (8th Cir. 1967) (admission of cumulative hearsay not plain error). As stated by the Missouri appellate court, the officer's allegedly objectionable testimony was cumulative. The court finds, therefore, in the alternative, that the decision of the Missouri appellate court, in regard to Petitioner's Ground 4, is not contrary to federal law and that it is a reasonable interpretation of federal law. See Robinson, 639 F.3d at 493. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 4 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 4 is without merit and that habeas relief on its basis should be denied.

**Ground 5 – Sufficiency of the Evidence for Second Degree Robbery:**

In Ground 5, Petitioner claims the trial court erred in accepting the jury's verdict convicting Petitioner of second-degree robbery because there was insufficient evidence that Petitioner threatened Ms. Sharpe with force or took her money. (Doc. 1 at 33-38). Upon addressing the issue of Petitioner's Ground 5, the Missouri appellate court held:

> Defendant claims that the trial court erred by accepting the jury's guilty verdict on Count I because the State failed to present sufficient evidence to prove that he committed second degree robbery. Specifically, Defendant argues that the evidence was insufficient to prove that he (1) "threatened the immediate use of physical force on or against Ms. Sharpe," or (2) took "U.S. currency" belonging to Ms. Sharpe. Because Defendant's allegation was not properly raised in his motion for a new trial, we again review only for plain error. Nunley, 992 S.W.2d at 894–95.

> First, Defendant argues that the evidence was insufficient to support the jury's finding that he "threatened the immediate use of physical force" against Ms. Sharpe because there was no specific showing that he was armed or that he affirmatively threatened Ms. Sharpe personally. We disagree. Missouri courts have routinely observed that "the force necessary to constitute robbery may be constructive as well as actual, and may consist in the intimidation of the victim, or putting him in fear." State v. Talkington, 858 S.W.2d 802, 805 (Mo. App. S.D. 1993) (quotation omitted). Particularly, "[t]hreatened physical force may be implied when the defendant engages in behavior that suggests he has a weapon, or from the use of fear-invoking phrases such as 'This is a holdup.'" Lybarger, 165 S.W.3d at 187. Ms. Sharpe testified that Defendant kept his hand in his pocket while driving and appeared to possess a weapon. She also testified that Defendant made threats indicating that "something would happen to her family" if she did not comply with his instructions and that she was "[w]orried to death." This testimony was sufficient probative evidence of intimidation and fear to support

the jury's finding that Defendant threatened immediate force upon Ms. Sharpe. See, e.g., State v. Duggar, 710 S.W.2d 921, 922 (Mo. App. S.D. 1986) (upholding jury's robbery conviction where evidence showed that "defendant did not offer physical violence, did not display any weapon and made no threats ... [and the victim] testified that he 'felt threatened.'").

Second, Defendant argues that Ms. Sharpe's deposition testimony was insufficient to support a finding that he "took U.S. currency" from her. Particularly, Defendant claims that Ms. Sharpe testified only that she "gave" money to "one of the men" and that the only transaction she recalled performing at the direction of the "heavier" man was at the first bank where she obtained the $9,000 cashier's check. However, Ms. Sharpe also testified that, after the first bank on Lindell, she "went to different banks," "withdr[e]w money at all these banks," and "gave this money to one of the men." Additionally, according to Ms. Sharpe's testimony, the "thinner" man exited the car at some point leaving only the "heavier" man, who she later identified as Defendant, driving Ms. Sharpe to the other banks. As Defendant was the only person with Ms. Sharpe throughout the entire incident, a reasonable jury could infer that Ms. Sharpe gave the money - i.e., "U.S. currency"- she withdrew from the subsequent banks to Defendant.

Finally, Defendant contends that destructive contradictions in Ms. Sharpe's testimony regarding the identity of the "heavier" man rendered her testimony unreliable to prove that Defendant was, in fact, the "heavier" man. "The doctrine of 'destructive contradictions' provides that a witness's testimony loses probative value when his or her statements at trial are so inconsistent, contradictory and diametrically opposed to one another that they rob the testimony of all probative force." State v. Fears, 217 S.W.3d 323, 328 (Mo. App. S.D. 2007). The doctrine, however, is not invoked by "mere discrepancies or conflicts in the witness's trial testimony", and such inconsistencies in testimony simply create "questions for jury resolution." Id. (quotation omitted). Rather, "[t]he doctrine is properly invoked only when the testimony is so 'inherently incredible, self-destructive or opposed to known physical facts' on a vital point or element that reliance on the testimony is necessarily precluded." Id. at 328-29 (quotation omitted).

Regarding the identity of the "heavier" man, Ms. Sharpe consistently testified that a "heavier" man "wearing a hat" was with her throughout the duration of the incident. She also testified that this was the man who "kept his hand in his pocket" and told her to "keep quiet" or "something would happen to her family." As to the "thinner" man, Ms. Sharpe testified that he was in the car initially, but left at some point and followed them in a different automobile. The only discrepancy in Ms. Sharpe's testimony occurred when she testified that, after the "heavier" man dropped her off in downtown St. Louis and ran to the car that had been following them, the driver of other car was also "heavy." Also, when testifying about the two identifications she made during the 2005 photographic lineups, Ms. Sharpe stated that she identified a certain picture (Defendant) as the "heavy guy ... with the hat," and identified another picture (co-defendant Wilks) as "the man with the hat." These minor discrepancies in Ms. Sharpe's testimony do not deprive her testimony of all probative value. Moreover, the jury could have also considered other testimony from the police officers to support their finding that Ms. Sharpe identified Defendant as the "heavier" man who drove her car, threatened her, and took her money. See Goodwin, 43 S.W.3d at 818 ("[I]t [is] well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact."). Point denied.

The State court also noted that Mo. Rev. Stat. § 569.010(1) (2000) defines "forcibly steals" in the context of second degree robbery as when a person "in the course of stealing ... uses or threatens the immediate use of physical force upon another person."

The United States Supreme Court stated in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.'"  505 U.S. 277, 283-84 (1992) (citing <u>Jackson v.</u> <u>Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original).  <u>See also</u> <u>Scott v. Jones</u>, 915 F.2d 1188, 1190 (8th Cir. 1990); <u>Haymon v. Higgins</u>, 846 F.2d 1145, 1146 (8th Cir. 1988).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts."  <u>Jackson</u>, 443 U.S. at 319.  <u>See also</u> <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); <u>Weston v. Dormire</u>, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing <u>Jackson</u>, 443 U.S. at 319, 321, 324; <u>Loeblein</u> <u>v. Dormire</u>, 229 F.3d 724, 726 (8th Cir. 2000)).

The scope of the federal court' review of a state court's determination that there was sufficient evidence to support the conviction is "extremely limited." <u>Skillicorn v. Luebbers</u>, 475 F.3d 965, 977 (8th Cir. 2007).  In order to be entitled to habeas relief, the petitioner must demonstrate not only that no rational trier of fact could have found the elements of the crime, but also that it was unreasonable for

the State court to determine otherwise.  Garrison v. Bart, 637 F.3d 849, 854-55 (8th Cir. 2011).  Critically, "this standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324 n.16.  Applying Missouri law to the evidence presented at trial, the court finds that a reasonable trier of fact, the jury, could have found that Petitioner threatened Ms. Sharpe with force, as required for a conviction of second-degree robbery.  Thus, to the extent Petitioner claims in Ground 5 that the evidence was insufficient to convict Petitioner of second-degree robbery, the court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable interpretation of federal law.  See Jackson, 443 U.S. at 319. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 5 without merit.  See Williams, 529 U.S. at 407-408, 413.  As such, the court finds that Petitioner's Ground 5 claim regarding the sufficiency of the evidence is without merit and that habeas relief on its basis should be denied.

To the extent Petitioner claims, in Ground 5, that the Missouri appellate court misapplied Missouri law when it held that the elements of robbery can be met with the proof of the type offered by the prosecution, issues concerning the interpretation and application of state law are not cognizable in federal habeas review.  See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not

the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).  Further, the United States Supreme Court held in Garner v. Louisiana, 368 U.S. 157, 166 (1961), that a federal court is "bound by a State's interpretation of its own statute and will not substitute [the federal court's] judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court."  Therefore, to the extent that Petitioner claims that the Missouri appellate court misapplied Missouri law when it held that the elements of robbery can be met with the proof of the type offered by the prosecution, the court finds that Petitioner's Ground 5 is not cognizable pursuant to federal habeas review.

**Ground 6 – Sufficiency of the Evidence – Attempted Stealing Over $25,000:**

In Ground 6, Petitioner claims the trial court erred in accepting the jury's verdict convicting Petitioner of attempted stealing over $25,000 because there was insufficient evidence that Petitioner represented himself as a police officer and that he instructed Mr. Tidwell to withdraw funds from his bank account. (Doc. 1 at 39-41). Upon addressing the issue of Petitioner's Ground 6, the Missouri court held:

> Defendant claims that the trial court erred by accepting the jury's guilty verdict on Count IV because the State failed to present sufficient evidence to prove that he attempted to steal over $25,000 from Mr. Tidwell. Specifically, Defendant argues that Detective Neske's testimony regarding Mr. Tidwell's out-of-court statements that a person impersonating a police officer and identifying himself as "Callahan" was trying to steal his money was the only evidence showing that he (1) attempted to steal $25,000 and (2) represented himself as a police officer. Because Defendant failed to raise his allegation of insufficient evidence in his motion for judgment of acquittal or his motion for a new trial, the issue is not properly preserved for appeal and we review only for plain error. State v. Nunley, 992 S.W.2d 892, 894–95 (Mo. App. S.D. 1999).
>
> In assessing the sufficiency of the evidence, our review is "limited to a determination of whether the record contains sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt." State v. Lybarger, 165 S.W.3d 180, 186 (Mo. App. W.D. 2005). We view all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, and disregard all evidence and inferences to the contrary. State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001). We afford circumstantial evidence the same weight as direct evidence. State v. Brooks, 158 S.W.3d 841, 847 (Mo. App. E.D. 2005) (citing State v. Hutchison, 957 S.W.2d 757, 767 (Mo. banc 1997)).
>
> To convict Defendant of attempted stealing over $25,000, the verdict director required the jury to find, among other things, that

Defendant "represented himself as a police officer and instructed J.B. Tidwell to withdraw U.S. currency from his bank account." Excluding Mr. Tidwell's out-of-court statements, the evidence at trial showed that a man identifying himself as "Sergeant Stone" called Mr. Tidwell and said, "[w]ell, I was just trying to confirm, and wanted my captain to know everything was still up" for the "operation." After Mr. Tidwell confirmed that everything was "still up," "Sergeant Stone" explained that instead of leaving at 9:00, he wanted Mr. Tidwell to leave for his bank at "like 9:15" to allow "our officers time for the bank to open up and we can set up our surveillance and stuff." "Sergeant Stone" then asked if Mr. Tidwell wanted to speak with his "Lieutenant," and Mr. Tidwell replied that it was not necessary. Before hanging up, Sergeant Stone reminded Mr. Tidwell that he needed to "get the $9,000 ... cash ... [a]nd two $9,000 cashier's checks," and if the tellers ask any questions, tell them "you're going to get your house fixed...." The next day, the police officers arrested Defendant and co-defendant Wilks in the parking lot of a service station near Mr. Tidwell's bank. After searching Defendant, the officers found Mr. Tidwell's name, address, and telephone number written on a piece of paper and a fake police badge with his picture and the name "Lieutenant Callahan" on it.

This evidence was sufficient for a reasonable juror to conclude that Defendant instructed Mr. Tidwell to obtain money from his bank account and that Defendant represented himself as a police officer. A reasonable jury could infer that "Sergeant Stone" and his "Lieutenant" had previously met with Mr. Tidwell, represented themselves as police officers, and instructed Mr. Tidwell to withdraw $27,000 for their undercover "operation." In addition, because Defendant was later arrested near Mr. Tidwell's bank with the man later identified as "Sergeant Stone" while possessing Mr. Tidwell's address and telephone number as well as a fake police badge with the name "Lieutenant Callahan," jurors could also infer that Defendant was the "Lieutenant" who previously instructed Mr. Tidwell to withdraw U.S. currency from his bank account. Point denied.

McGee, 284 S.W.3d at 704-705.

The court has set forth above, in regard to Petitioner's Ground 5, the standard applicable to a federal court's habeas review of a state prisoner's claim that the evidence to convict him was insufficient. See Jackson, 443 U.S. at 324 n.16; Skillicorn, 475 F.3d at 977; Garrison, 637 F.3d at 854-55. Applying Missouri law to the evidence presented at trial, the court finds that a reasonable trier of fact, the jury, could have found that Petitioner was guilty of attempting to steal $25,000 from Mr. Tidwell based on the evidence presented at trial. Thus, the court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 6 is not contrary to federal law and that it is a reasonable interpretation of federal law. See Jackson, 443 U.S. at 319. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 6 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court further finds that Petitioner's Ground 6 is without merit and that habeas relief on its basis should be denied.

**Grounds 7, 8, and 9 – Challenge to Finding Petitioner a Prior and a Persistent Offender:**

In Ground 7, Petitioner claims the trial court erred in finding Petitioner a prior offender, and in Ground 8, Petitioner claims the trial court erred in finding him a persistent offender. In Ground 9, Petitioner claims the trial court erred in entering a written judgment imposing a seven-year sentence for stealing because it orally sentenced him to five years for stealing; in its oral pronouncement on

Petitioner's stealing conviction, the trial court sentenced Petitioner to five years but the written judgment imposed a seven-year sentence. (Doc. 1 at 42-57). Upon addressing the issues of Petitioner's Grounds 7, 8, and 9 the Missouri appellate court held:[5]

> Defendant claims that the trial court erred in adjudicating him a prior and persistent offender because that the State failed to present sufficient evidence of his prior convictions and that the trial court failed to comply with the procedural requirements provided by Mo. Rev. Stat. § 558.021 (2000). Specifically, Defendant claims that: (1) the State did not offer the foreign convictions records into evidence, (2) the State did not prove that Defendant was represented by counsel in the prior proceedings, and (3) the trial court erred by allowing the State to present evidence of prior convictions not pled in the information and by determining his status as a persistent offender after the case had been submitted to a jury. Defendant again asks us to review his unpreserved claim for plain error.

> Pursuant to Section 557.036.3, upon a finding of guilt, a criminal defendant has a statutory right to jury sentencing. Mo. Rev. Stat. § 557.036.3 (Cum. Supp. 2003); State v. Weaver, 178 S.W.3d 545, 547 (Mo. App. W.D. 2005). However, a defendant loses that right if the State pleads and proves that the defendant is a "prior offender" or "persistent offender," in which case the trial court, and not a jury, shall assess the punishment. Mo. Rev. Stat. § 557.036.4(2). A "prior offender" is defined as "one who has pleaded guilty to or has been found guilty of one felony." Mo. Rev. Stat. § 558.016.2 (Cum. Supp. 2005). A "persistent offender" is "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Mo. Rev. Stat. § 558.016.3. While a prior offender is only deprived of having the jury recommend the sentence, a

---

[5] Petitioner did not actually raise Ground 9 as a separate issue on direct appeal. Because the issue of Ground 9 is merely an extension of the issue of Ground 8, the court will assume, however, that he did raise the issue of Ground 9 before the Missouri appellate court.

persistent offender is also subject to enhanced punishment. Mo. Rev. Stat. § 558.016.7.

Section 558.021 sets forth the procedures for determining a defendant's status as a prior or persistent offender as follows: (1) the information or indictment must plead "all essential facts warranting a finding that the defendant is a prior offender, [or] persistent offender[,]" (2) the State must introduce evidence "that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, [or] persistent offender[,]" (3) the trial court must make "findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender, [or] persistent offender[,]" and (4) "[i]n a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of its hearing[.]" Mo. Rev. Stat. § 558.021.1, 2.

In the instant case, the information alleged that Defendant was a prior and persistent offender due to two prior felonies: a 1990 Kansas conviction for unlawful use of a financial device and a 1966 Tennessee conviction for grand larceny. Before the case was submitted to the jury, the trial court held a hearing to determine whether Defendant was a prior and persistent offender. At the hearing, the State presented "certified copies" for both the Kansas and Tennessee convictions, which were reviewed by the trial court and defense counsel. The criminal records revealed that Defendant was given a four-year sentence for his Tennessee conviction and sentenced to 45 days in jail for the Kansas conviction. Ultimately, the trial court concluded that because Defendant received a sentence in excess of one year for the Tennessee conviction, he was a "prior offender." The court determined that evidence of the Kansas conviction was insufficient to prove a second felony.

After the jury returned its verdicts finding Defendant guilty on all counts, the trial court held a subsequent hearing to determine whether Defendant was a "persistent offender." The prosecution presented evidence of two felony convictions for forgery committed in 1987 and 1995 in Tennessee. Based on this evidence, the trial court determined that Defendant was a "persistent offender," and the court proceeded to sentence Defendant.

Defendant first argues that the State failed to present sufficient proof of his prior 1966 Tennessee conviction because Defendant's conviction records were not formally admitted as evidence. "When the showing of the existence of a court record 'is essential to enable a party to a cause to bear his burden of proof upon some matter at issue therein, then the record itself must be introduced in evidence, *absent an admission* of its contents by opposing counsel.'" State v. Hurst, 845 S.W.2d 669, 670 (Mo. App. E.D. 1993) (emphasis in the original) (quotation omitted). While defense counsel did not expressly admit the contents of the conviction records, he reviewed the files, listened to the prosecutor summarize Defendant's convictions, and did not object to the contents of the conviction record. See id. at 671. Moreover, a certified copy of a foreign conviction is sufficient evidence to prove that a defendant is a prior offender beyond a reasonable doubt. State v. Durham, 676 S.W.2d 86, 87 (Mo. App. S.D. 1984). Accordingly, Defendant's foreign conviction record, which was treated as evidence by all the parties, was sufficient evidence to support the trial court's finding that Defendant was a prior offender.

Second, Defendant contends that the State failed to prove that he was represented by counsel in the 1966 Tennessee case. Defendant relies on State v. Cooper, 16 S.W.3d 680, 682 (Mo. App. E.D. 2000) which provides that "to use a prior conviction for purposes of a prior offender finding, the state must prove that defendant was represented by counsel or waived this right at the prior proceedings." Id. Under Section 516.016, however, there is no requirement that the State present evidence showing that the defendant was represented by or waived counsel in the prior proceeding to prove a defendant's status as a prior offender. See Mo. Rev. Stat. § 558.016. A review of Missouri case law reveals that this additional requirement found in Cooper and earlier cases derived from United States Supreme Court precedent holding that, pursuant to a defendant's Sixth Amendment right to counsel, "a [prior] conviction in a proceeding in which the defendant was not represented by or waived counsel *cannot be used* for enhancement in a subsequent proceeding in which imprisonment is to be imposed." State v. Wilson, 684 S.W.2d 544, 545 (Mo. App. S.D. 1984) (emphasis added) (citing Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967)); see also State v. Sheets, 468

S.W.2d 640, 643 (Mo. 1971). When a defendant is determined to be a prior offender, but not a persistent offender, the defendant is not subject to an enhanced sentence. Rather, a prior offender determination causes the loss of a defendant's statutory right to have the jury "assess and declare punishment." Mo. Rev. Stat. § 557.036.3, 4. Because the trial court used the 1966 Tennessee conviction only to support its initial finding that Defendant was a prior offender, Defendant, at that point, was not properly subject to an enhanced sentence and therefore the State was not required to prove that Defendant was represented by or waived counsel during the proceedings of his prior conviction.

Last, Defendant contends that the trial court erred [] after the case had been submitted to the jury [by]: (1) allowing the State to present evidence of two prior felony fraud convictions it did not plead in the information, and (2) finding that Defendant was a persistent offender. In support, Defendant points to Section 558.021.2 which provides that to prove a defendant's status as a prior or persistent offender, "[i]n a jury trial, the facts shall be pleaded, established and found prior to submission to the jury...." Mo. Rev. Stat. § 558.021.2.

The State concedes that the trial court erred by allowing the State to prove up prior felonies not pled in the information after the case had been submitted to the jury. The only question remaining is the appropriate corrective action, if any, to remedy the trial court's error. Defendant asserts that this court should reverse the judgment and remand the case with instructions to re-sentence him free from the sentence enhancement permitted for persistent offenders. Conversely, the State contends that because the evidence elicited in violation of Section 558.021.2 was sufficient to support the trial court's finding that Defendant was a persistent offender, the trial court's failure to comply with procedures of Section 558.021 constituted harmless error[,] and, at most, this court need remand only for the State to amend its information to include the two forgery convictions offered as proof at the persistent offender hearing.

Our Supreme Court in State v. Teer explicitly held that "[t]he plain language of section 558.021.2 imposes a mandate requiring that prior offender status be pleaded and proven prior to the case being submitted to the jury." 275 S.W.3d 258 (Mo. banc 2009). As such,

"[w]here the state fails to present evidence before the case is submitted to the jury, which is the timing the statute explicitly requires, there is no basis on which to sentence [a defendant] as a prior and persistent offender." State v. Emery, 95 S.W.3d 98, 101 (Mo. banc 2003). Therefore, contrary to the State's position, even if the evidence of the two forgery convictions was sufficient to prove Defendant's persistent offender status, the State's failure to present this evidence before the case was submitted to the jury violated the statutory mandates of Section 558.021 and deprived the trial court of a basis to sentence Defendant as a persistent offender. See id.

While we agree with Defendant that the trial court erroneously sentenced him as a persistent offender, our inquiry does not end there. To determine whether reversible error occurred, Teer requires that we consider whether Defendant has established actual prejudice with respect to the sentence. Teer, 275 S.W.3d 258. In Teer, the Court concluded that the defendant was prejudiced when the trial court's failure to comply with Section 558.021 resulted in the defendant's subjection to a twenty-year sentence instead of the four-year maximum sentence set by the jury, and, therefore, the Court reversed the sentence and remanded the case for sentencing in accordance with the jury's initial recommendation. Id. Here, unlike in Teer, Defendant has failed to prove prejudice with respect to his sentences because he was not entitled to jury sentencing and the sentences imposed by the trial court did not exceed the unenhanced statutory range the trial court could have imposed had it properly sentenced Defendant only as a prior offender. Accordingly, we decline to grant Defendant's request for re-sentencing. However, we recognize that there are "other possible ramifications of Defendant's sentence as a persistent offender, such as the possibility of it affecting his future parole." State v. Halk, 955 S.W.2d 216, 217 (Mo. App. E.D. 1997); see also State v. Williams, 145 S.W.3d 874, 879 (Mo. App. E.D. 2004). Therefore, while we decline to remand for re-sentencing, we will correct the judgment and sentence to reflect sentencing as a prior offender only. See Halk, 955 S.W.2d at 217; Rule 30.23. Point granted.

McGee, 284 S.W.3d at 701-13.

The Missouri appellate court also noted that, "[f]or the purposes of finding a defendant to be a prior or persistent offender under § 558.016, "[a] crime is a 'felony' if it is so designated or if the persons convicted thereof may be sentenced to death or imprisonment for a term which is in excess of one year," McGee, 284 S.W.3d at 711 n.8 (citing Mo. Rev. Stat. § 556.016.2; State v. Yung, 246 S.W.3d 547, 552 (Mo. App. S.D. 2008)), and that Baldasar was later overruled by Nichols v. United States, 511 U.S. 738, 748-749 (1994), "to the extent that Baldasar had previously held that a prior unrepresented misdemeanor conviction could not be used to enhance punishment upon a subsequent conviction, even when no imprisonment was imposed from the prior misdemeanor," id. at 712 n.9.

In Ground 7, Petitioner challenges the Missouri appellate court's application of Missouri law regarding the procedure and necessary proof of prior offender status. As discussed above, a challenge to a State court's application of State law is not reviewable pursuant to federal habeas proceedings. See Estelle, 502 U.S. at 67-68. As such, the court finds Petitioner's Ground 7 is not cognizable pursuant to federal habeas review. As for Petitioner's Grounds 8 and 9, the Missouri appellate court agreed with Petitioner's claim that the trial court erred in finding him a persistent offender; the Missouri appellate court corrected the judgment against Petitioner to reflect that he was not sentenced as a persistent offender, and "modif[ied] the written judgment to designate a five year sentence for

[Petitioner's] conviction of stealing by deceit." <u>McGee</u>, 284 S.W.3d at 713. The court finds, therefore, that Petitioner's Grounds 8 and 9 are moot and that habeas relief on their basis should be denied.

**Ground 10 – Objectionable Voir Dire:**

In Ground 10, Petitioner claims that the trial court erred in permitting the prosecutor to refer to Petitioner by his aliases during voir dire. (Doc. 1 at 58-64). Upon addressing the issue of Ground 10, the Missouri appellate court held:

> Defendant claims that the trial court erred by allowing the prosecutor to improperly reference Defendant's aliases during voir dire and by not declaring a mistrial. The prosecutor inquired whether the venire knew Defendant and added that Defendant was also known as "Thomas Charles McGee, Charles Suggs, Samuel Winston, Anthony Wilson, Anthony Brown, Isaiah Brown." Defense counsel immediately objected and moved for a mistrial on the grounds that the prosecutor's reference to Defendant's alleged aliases implied that Defendant was a career criminal and was irrelevant because Defendant did not use any of the aliases mentioned when allegedly committing the charged offenses. The trial court overruled Defendant's objection and permitted the prosecutor to ask the following question: "I wanted to probe whether you might know him by a different name. Among those names is Anthony Brown, Isiah Brown, Thomas Cole, Richard Gains, David Leon Ward, Vernel Wilson, John Hacket, Robert Holland Mason. Does anyone recognize those names?"
>
> "The essential purpose of voir dire is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges." <u>Grab ex rel. Grab v. Dillon</u>, 103 S.W.3d 228, 240 (Mo. App. E.D 2003) (quotations omitted). A trial court's ruling on the propriety of specific questions and conduct at voir dire is reviewed for abuse of discretion. <u>State v.</u>

Edwards, 116 S.W.3d 511, 529 (Mo. banc 2003).  Where an abuse of discretion has occurred, a new trial is warranted only if the defendant demonstrates a "real probability" that he or she was prejudiced by the abuse.  Id. (quoting State v. Betts, 646 S.W.2d 94, 98 (Mo. banc 1983)).

Claiming that he was prejudiced by the prosecutor's comments, Defendant emphasizes the dangers associated with the use of a defendant's "aliases" in front of the jury.  Defendant relies on State v. Varner, where our Supreme Court noted that the reference to "an 'alias,' the word, normally carries an unfavorable connotation and its improper or unfair use may necessitate the granting of a new trial." 329 S.W.2d 623, 626 (Mo. 1959) (emphasis added).  Subsequent to Varner, Missouri courts have clarified that "[a] showing that an accused person used an alias is not per se prejudicial, and where a reference to an alias creeps into the proceedings, the situation on appeal will be controlled by a concrete appraisal of the significance of the incident in relation to the processes of the trial as a whole."  State v. Finley, 588 S.W.2d 229, 231 (Mo. App. W.D. 1979) (citing State v. Loston, 234 S.W.2d 535, 540 (Mo. 1950)); see also Varner, 329 S.W.2d at 626-27 (holding that despite the reference to the defendant's alias in the information, "in the circumstances of this record the [defendant] was not unfairly or improperly prejudiced[.]").

Even assuming, as Defendant does, that the trial court abused its discretion by allowing the prosecution to reference Defendant's aliases at voir dire, a thorough appraisal of the whole record reveals that no prejudice resulted.  First, the prosecutor's reference to Defendant's aliases served a proper purpose by identifying jurors who either may have been or knew someone previously victimized by Defendant.  See State v. Young, 844 S.W.2d 541, 546 (Mo. App. E.D. 1992).  Outside the presence of the jury, the prosecutor explained to the court that the aliases were obtained through Defendant's arrest records, and that Defendant had a long history of criminal conduct and came "through St. Louis all the time."  The trial court expressed its concern that, due to the nature of the charges, there was an increased risk of undisclosed victims.  To identify potential jurors acquainted with Defendant through a different name, the trial court reasonably exercised its discretion by allowing the prosecutor to reference Defendant's other names at voir dire.

Second, the prosecutor never used the word "alias" during voir dire or at trial.  See, e.g., id.  While this alone does not preclude a finding of prejudice, it does mitigate the harm alluded to in Varner where the Court recognized the "unfavorable connotation" associated with "the use of 'alias,' the word [.]"  329 S.W.2d at 626 (emphasis added).

Finally, the record shows that all venirepersons expressing prejudice or bias caused by the prosecutor's use of Defendant's aliases were removed from the case.    During the defense's voir dire, counsel probed whether any jurors drew adverse inferences against Defendant from the prosecutor's comments.  Ultimately, four potential jurors indicated that Defendant's use of aliases made them believe Defendant was guilty of the crimes charged, and those jurors were subsequently removed.  Importantly, the remainder of the venire, after being expressly asked, affirmed that they could set aside the names listed by the prosecutor and only consider the evidence introduced at trial when determining Defendant's guilt.  See State v. Cornett, 381 S.W.2d 878, 883 (Mo. banc 1964) (noting that a potential juror who has formed an opinion about the case should be dismissed "unless subsequent examination discloses unequivocally that he will be guided sole[l]y by the evidence.").

Given the record before us, we find that the trial court did not abuse its discretion by allowing the State to reference Defendant's aliases.  Moreover, even assuming, arguendo, that the prosecutor's reference to Defendant's aliases was improper, Defendant is not entitled to a new trial because he has failed to demonstrate that the prosecution's comments resulted in a "real probability" he was prejudiced.  Point denied.

McGee, 284 S.W.3d at 699-700.

Under federal law, "[c]ourts have broad discretion in determining what questions will be asked during voir dire."  Ratliff v. Schiber Truck Co., Inc., 150 F.3d 949, 956 (8th Cir. 1998).  The Eighth Circuit has further held:

> "However, the substance of voir dire examination is subject to the right of the parties to have an impartial jury and the questioning must in general attempt to preserve that right." Id. (citation omitted). . . . Absent an objection, the reviewing court will only review for plain error to determine if the limitation was so prejudicial as to cause a miscarriage of justice. Fleming v. Harris, 39 F.3d 905, 908 (8th Cir. 1994). "Under plain error review, an error not identified by a contemporaneous objection is grounds for reversal only if the error prejudices the substantial rights of the [Appellants] and would result in a miscarriage of justice if left uncorrected." Id.

Id.

"[V]oir dire 'serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." Mu'Min v. Virginia, 500 U.S. 415, 431 (1991). See also Pointer v. United States, 151 U.S. 396, 408 (1894) (right to challenge is "one of the most important rights secured to the accused"; "[a]ny system for the impaneling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right must be condemned.").

Further, there is nothing improper under federal law for a prosecutor to ask jurors, during voir dire, if any of them know the defendant. Cf. United States v. Williams, 77 F.3d 1098 (8th Cir. 1996) (prosecutor could ask if jurors knew "other" persons by same name as defendant); Clark v. United States, 61 F.2d 695 (8th Cir. 1932) (noting that a juror's false response to question as to whether panel members knew defendant created prejudice can be sufficient to set aside verdict).

The court finds, therefore, that the decision of the Missouri appellate court in regard to Petitioner's Ground 10 is not contrary to federal law and that it is a reasonable interpretation of federal law. See Mu'Min, 500 U.S. at 431; Pointer, 151 U.S. at 408. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 10 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 10 is without merit and that habeas relief on its basis should be denied.

**Ground 11 – Ms. Sharpe's Video Deposition:**

In Ground 11, Petitioner argues that the trial court erred in admitting Ms. Sharpe's video deposition because its admission violated the Confrontation Clause. (Doc. 1 at 65-77). Upon addressing the issue of Ground 11, the Missouri appellate court held:

> Defendant argues that the trial court erred in finding that Ms. Sharpe was "unavailable" because the State failed to present sufficient evidence that Ms. Sharpe was unavailable to testify at trial due to sickness or infirmity. Consequently, Defendant argues that the State's introduction of Ms. Sharpe's deposition testimony violated his confrontation rights under the Sixth Amendment.
>
> The Confrontation Clause of the Sixth Amendment prohibits the admission of out-of-court testimonial statements unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. Justus, 205 S.W.3d at 878 (citing Crawford, 541 U.S. 36, 124 S.Ct. 1354). A trial court's determination that a witness is "unavailable" is reviewed for an abuse of discretion. State v. Williams, 554 S.W.2d 524, 531-35 (Mo. App. 1977). A witness may be "unavailable" if he or she is unable to testify at trial due to sickness or infirmity. Rule 25.16(b)(2); Williams, 554 S.W.2d at 531-35.

Here, Defendant did not preserve the alleged error for appeal, and, therefore, our review is for plain error, which requires a finding of evident, obvious, and clear error resulting in a manifest injustice or miscarriage of justice.  Lucio, 247 S.W.3d at 134-35.

Prior to trial, Ms. Sharpe's doctor, Dr. Garret Hagen sent a letter to the prosecutor stating, generally, that Ms. Sharpe would not be available to testify at trial.   During pre-trial proceedings, the prosecutor informed the trial court of the letter and explained that Ms. Sharpe was 83 years-old and that Ms. Sharpe's family informed her that she "had two surgeries in April to remove blood clots from her leg, [and] a surgery ... in May to restore the circulation in her feet because she suffers from diabetes."  The prosecutor also told the court that she had been informed that Ms. Sharpe had a low red blood cell count and was receiving injections of Procrit.  The trial court told the prosecutor that more details from Ms. Sharpe's doctor were necessary to prove that Ms. Sharpe was unavailable.   Subsequently, the prosecutor submitted to the trial court medical records stating that Ms. Sharpe suffered from "congestive heart failure" and that around "April or May she start[ed] deteriorating with the surgeries and lack of circulation and several other things."  The prosecutor also provided the court with a signed statement from Dr. Hagen indicating that Ms. Sharpe's attendance at trial could have serious and lasting harm to her physical/mental condition.  Because Dr. Hagen's statement was not notarized, the court elicited testimony from the prosecutor's investigator who obtained the statement that Dr. Hagen identified himself to her, signed the statement in her presence, and indicated that everything in the written statement was correct.  After hearing this testimony, the trial court concluded that the evidence was sufficient to establish Ms. Sharpe's unavailability.  Based on this evidence, the trial court did not abuse its discretion in determining that Ms. Sharpe was unavailable to testify.  Point denied.

McGee, 284 S.W.3d at 707-708.

First, to the extent Petitioner challenges the State court's finding that the evidence was sufficient to establish that Ms. Sharpe was unavailable to testify, as discussed above, this court's review of the sufficiency of the evidence is very

limited.  See Skillcorn, 475 F.3d at 977.  Given the extensive evidence of Ms. Sharpe's unavailability, the court finds that the decision of the Missouri appellate court that the evidence was sufficient to establish Ms. Sharpe's unavailability is neither incorrect nor unreasonable.  See Garrison v. Burt, 637 F.3d 849, 854-55 (8th Cir. 2011) ("Because AEDPA only allows us to grant habeas relief if there was 'an unreasonable application of [ ] clearly established Federal law,' 28 U.S.C. § 2254(d)(1), we may grant relief only if we find the [State] Court of Appeals' conclusion that the evidence satisfied the Jackson sufficiency of evidence standard 'both incorrect and unreasonable.'") (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)).

Second, the Supreme Court holds that the Confrontation Clause does not bar admission of out-of-court testimonial statements where the witness is unavailable for trial and the defense previously had the opportunity for cross-examination her. Melendez–Diaz v. Massachusetts, 129 S.Ct. 2527, 2531 (2009); Crawford v. Washington, 541 U.S. 36, 51 (2004).  Although the Federal Rules of Evidence generally exclude hearsay statements, Rule 804(b)(5) provides for an exception where the declarant is unavailable.  United States v. Harbin, 112 F.3d 974, 976 (8th Cir. 1997).  Rule 804(a)(4), provides that the criteria for unavailability include that the witness "cannot be present or testify at the trial . . .  because of . . .  a then existing infirmity, [or] physical illness."  In Petitioner's case, as considered by the

Missouri appellate court, Ms. Sharpe was unavailable to testify at trial due to infirmities and Petitioner had the opportunity to cross-examine her deposition testimony. As such, the court finds that the decision of the Missouri appellate court, in regard to Petitioner's Ground 11, is not contrary to federal law and that it is a reasonable interpretation of federal law. See Melendez–Diaz, 129 S.Ct. at 2531; Crawford, 541 U.S. at 51. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 11 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 11 is without merit and that habeas relief on its basis should be denied.

**Ground 12 – Ineffective Assistance of Counsel - Petitioner's Wife:**

In Ground 12, Petitioner argues his trial counsel was ineffective for failing to file a timely notice of an alibi, to endorse his wife as a witness, and to make an offer of proof as to his wife's testimony. Petitioner argues, as he did before the Missouri appellate court, that his wife was willing and available to testify that he was with her on November 23, 2005, in Tennessee, spending the Thanksgiving holiday with his family. Petitioner further argues that, had his wife testified, there is a reasonable probability the jurors would not have found him guilty. (Doc. 1 at 79-84). Upon rejecting this claim, on appeal, the Missouri appellate court held:

> Generally, the "selection of witnesses is a matter of trial strategy and is therefore not a foundation for a finding of ineffective

assistance of counsel." <u>Reliford v. State</u>, 186 S.W.3d 301, 305 (Mo. App. E.D. 2005); <u>see also</u> <u>McClanahan v. State</u>, 276 S.W.3d 893, 895 (Mo. App. S.D. 2009). However, a movant can establish an ineffective assistance claim for failure to call a witness if the movant proves that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness'[s] testimony would have provided a viable defense. <u>Huchinson v. State</u>, 150 S.W.3d 292, 304 (Mo. banc 2004).

Here, assuming, arguendo, that a reasonably competent attorney would have filed a timely notice of alibi and timely endorsed Movant's wife as an alibi witness, there is no basis to conclude that her testimony would have provided a viable defense. Movant does not allege that his wife would have testified he was with her at the date and time of the third crime. Rather, Movant contends his wife was willing to testify that he was with her in Tennessee on November 23, 2005. Because it is possible Movant was in St. Louis at 2:30 p.m. on November 23, 2005 and in Tennessee later the same day, Movant's allegation that he was in Tennessee on that date does not preclude commission of the crime in St. Louis. <u>See</u> <u>Helmig</u>, 42 S.W.3d at 670 (holding that it is not ineffective assistance of counsel to decide not to call witnesses whose testimony only accounts for movant's whereabouts before or after the time of the crime); <u>State v. Davis</u>, 965 S.W.2d 927, 931; S.W.2d 252, 258 (Mo. App. W.D. 1998); <u>Thomas v. State</u>, 710 S.W.2d 30 (Mo. App. S.D. 1986). Therefore, Movant has not shown that he was prejudiced by trial counsel's failure to timely endorse his wife as an alibi witness.

Movant also contends his trial counsel was ineffective for failing to file a timely notice of alibi. He asserts that his wife was willing to testify that he was in Tennessee at the time of the crime and, therefore, did not commit the charged offenses. As discussed above, Movant did not allege sufficient facts showing that his wife would have provided a viable alibi defense. Without a witness or other evidence to support an alibi defense, notice of alibi is unnecessary. <u>State v. Dixon</u>, 969 S.W.2d 252, 258 (Mo. App. W.D. 1998). As such, Movant's counsel was not ineffective for failing to file the notice of alibi.

(Resp. Ex. G at 5-6).

As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>Strickland</u>, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" <u>Hanes v. Dormire</u>, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." <u>Id.</u> The decision whether to call witnesses may be a matter of trial strategy. <u>Hall v. Lubbers</u>, 296 F.3d 685, 694 (8th Cir. 2002); <u>Battle v. Delo</u>, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions made after thorough investigation of law and facts ... are virtually unchallengeable, even if that decision later proves unwise." <u>Strickland</u>, 466 U.S. at 590 (internal quotation and citation omitted). Where a habeas petitioner claims ineffective assistance of counsel based on counsel's failure to call an alibi witness,

the Eighth Circuit has "consistently required a defendant to prove actual prejudice under Strickland." Freeman v. Graves, 317 F.3d 898, 901 (8th Cir. 2003) (citing Hadley v. Groose, 97 F.3d 1131, 1134-35 (8th Cir. 1996); Lawrence v. Armontrout, 31 F.3d 662, 666 (8th Cir. 1994); Tosh v. Lockhart, 879 F.2d 412, 413 (8th Cir. 1989)).

In the instant matter, the Missouri appellate court considered that Petitioner was not prejudiced by counsel's failures because Petitioner's wife would not have provided a true alibi, given that his presence in Tennessee, at some point, on the November 23, 2005, did not preclude his being in St. Louis at 2:30 p.m. on that same date. As such, the court finds that the decision of the Missouri appellate court, in regard to Petitioner's Ground 12, is not contrary to federal law and that it is a reasonable interpretation of federal law. See Strickland, 466 U.S. at 688-90. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 12 without merit. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 12 is without merit and that habeas relief on its basis should be denied.

**Ground 13 – Ineffective Assistance of Counsel – Petitioner's Co-Defendant:**

In Ground 13, Petitioner claims his trial counsel was ineffective for failing to call his co-defendant, Mr. Wilks, to testify at trial. Petitioner argues that Mr. Wilks was willing and available to testify that "he was not with Petitioner on any of the

dates charged in Counts I-IV," October 8, 2003, and April 5 and 6, 2005, and that "Petitioner did not commit any of the charged offenses with [Wilks] on those dates." (Doc. 1 at 84).

Upon addressing the claim of Ground 13, the Missouri appellate court considered what it stated above regarding proving ineffective assistance of counsel based on counsel's failure to call a witness and held:

> The record shows that co-defendant Wilks announced on the third day of trial that he did not want to testify. The Court questioned Wilks about his decision not to testify, and he stated that he had consulted with counsel and ultimately made the decision not to testify on his own. Although the Court advised Wilks that if he changed his mind before the end of trial, he would be allowed to testify, he did not seek to testify. Accordingly, the co-defendant's alleged willingness to testify is refuted by the record.

> Moreover, it is clear from the record that the codefendant's testimony would not have provided a viable defense. Hutchinson, 150 S.W.3d at 304. Movant alleges that co-defendant Wilks would have testified that: (1) he did not commit the charged offenses on October 8, 2003, and April 5 and 6, 2005, and (2) he was not with Movant on those dates. Co-defendant Wilks' alleged testimony revealed only that he had no personal knowledge regarding Movant's activities on October 8, 2003, and April 5 and 6, 2005, leaving open the possibility that Movant committed the crimes charged on those dates.

(Resp. Ex. G at 7-8).

The court has set forth, above, in regard to Petitioner's Ground 12, the federal standard applicable to claims of ineffective assistance of counsel based on counsel's failure to call a witness. Additionally, counsel is not ineffective for failing to call a witness where counsel based his decision not to call the witness on

the expectation that the witness would plead the Fifth Amendment. <u>Battle v. Delo</u>, 19 F.3d 1547, 1556 (8th Cir. 1994) (counsel not ineffective where he testified decision not to call co-defendant as witness was because he expected the co-defendant to either deny any part in the crime or plead the Fifth Amendment). In fact, in the instant matter, as noted by the Missouri appellate court, Wilks informed the court that he did not want to testify. Further, according to Petitioner, Wilks would have testified that he was not with Petitioner on the dates Petitioner allegedly committed the charged offenses; thus Wilks's testimony would not have established an alibi for Petitioner. Petitioner, therefore, cannot establish prejudice based on counsel's alleged failures regarding Wilks. As such, the court finds that the decision of the Missouri appellate court, in regard to Petitioner's Ground 13, is not contrary to federal law and that it is a reasonable interpretation of federal law. <u>See</u> <u>Strickland</u>, 466 U.S. at 688-90. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case when finding Ground 13 without merit. <u>See</u> <u>Williams</u>, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 13 is without merit and that habeas relief on its basis should be denied.

**Ground 14 – Ineffective Assistance of Counsel – Detective Neske's Testimony:**

Petitioner argues trial counsel was ineffective for failing to ask the court to strike Detective Neske's testimony regarding Mr. Tidwell's statements. Petitioner contends:

> Petitioner was prejudiced by counsel's failure because Petitioner argued on direct appeal the Trial Court had erred in overruling the defense objection to Detective Neske's testimony about what Mr. Tidwell had told him. The Court of Appeals did not reverse on that point because trial counsel had not requested the Trial Court strike Detective Neske's testimony and instruct the jury to disregard it. Had the Court of Appeals reverse[d], the jurors at a subsequent trial would not have heard evidence Mr. Tidwell told Detective Neske a man identifying himself as a police officer named Callahan was trying to steal from him.

(Doc. 1 at 88).

On appeal, Petitioner argued that his trial counsel was ineffective for failing to ask the trial court to strike references Detective Neske made to Mr. Tidwell's use of the name "Callahan" and to order the jurors to disregard such references. He argued that counsel's failure to do so caused the issue not to be preserved for appeal. Upon addressing this claim, the Missouri appellate court held that the failure to preserve an issue for appeal is not cognizable pursuant to Rule 29.14; rather, "post-conviction relief for ineffective assistance of counsel is limited to errors that prejudiced Movant by denying him a fair trial." The Missouri appellate court concluded that although trial counsel has a duty to preserve error by making an appropriate motion, "the failure to preserve error for appellate review does not affect" the right to a fair trial. (Resp. Ex. G at 8).

Because the Missouri appellate court did not address the underlying constitutional arguments Petitioner makes in Ground 14, the court will review Ground 14 pursuant to a pre-AEDPA standard.  Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.").  Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987) (en banc)).

The court has found above, in regard to Petitioner's Ground 3, that the trial court did not err in permitting Detective Neske to testify regarding Mr. Tidwell's statements, including that two men with police badges identified themselves as police officers named "Stone" and "Callahan" and that the men asked Mr. Tidwell to obtain money from his personal checking account and hand it over to them. Because the issue underlying Petitioner's Ground 14 is without merit, Petitioner cannot establish prejudice based on counsel's failure to move to strike Detective Neske's referencing Mr. Tidwell's use of the name Callahan; any objection to Detective Neske's testimony would not have been successful.  See Strickland, 466 U.S. at 688-90.  The court finds, therefore, pursuant to a pre-AEDPA standard, that

Petitioner's Ground 14 is without merit and that habeas relief on its basis should be denied.  See Strickland, 466 U.S. at 687; Robinson, 278 F.3d at 865.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not recommend a certificate of appealability issue or that in forma pauperis be granted on appeal.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**, and **DISMISSED** (Doc. 1);

**IT IS FURTHER REOMMENDED** that no certificate of appealability should issue and in forma pauperis not be granted on appeal.  28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file

timely objections may result in a waiver of the right to appeal questions of fact.

See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Dated this 24th day of December 2014.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE